UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 14-54351 |
| AMY ROSENFELD, | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |
| _____/ | |
| JOEL ROSENFELD, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 15-4318 |
| AMY ROSENFELD, | |
| Defendant. | |
| _____/ | |

**OPINION REGARDING SUBJECT MATTER JURISDICTION**

**I. Introduction**

Plaintiff Joel Rosenfeld is the ex-husband of Defendant Amy Rosenfeld (the "Debtor"). Debtor filed a voluntary petition for relief under Chapter 7 on September 10, 2014, commencing Case No. 14-54351. On March 31, 2015, Plaintiff filed this adversary proceeding, seeking an order denying the Debtor a discharge under several provisions of 11 U.S.C. § 727(a).

It appeared to the Court that any debt the Debtor owes to Plaintiff is nondischargeable in the Debtor's Chapter 7 case under 11 U.S.C. § 523(a)(15). As a result, the Court questioned whether Plaintiff has the requisite personal stake in the outcome of this § 727(a) action to support subject matter jurisdiction. On June 5, 2015, the Court entered an order requiring Plaintiff to show cause in writing why this adversary proceeding should not be dismissed, for lack of subject matter jurisdiction, based on this Court's reasoning in *Mapley v. Mapley*, 437 B.R. 225 (Bankr.

E.D. Mich. 2010) (Docket # 14, the "Show-Cause Order").

On June 19, 2015, Plaintiff filed a brief in response to the Show-Cause Order (Docket # 16). On June 27, 2015, the Court entered an order that permitted the Debtor to file a response to the Show-Cause Order and to the arguments made in Plaintiff's brief (Docket # 18). On July 13, 2015, the Debtor filed a brief in response to the Show-Cause Order (Docket # 24).

The Court has considered the arguments of the parties, and the Court concludes that a hearing is not necessary; and that this adversary proceeding must be dismissed, because the Court lacks subject matter jurisdiction.

**II. Facts**

**A. The judgment of divorce**

Prepetition, on July 1, 2013, a judgment of divorce was entered between the parties in the Oakland County, Michigan Circuit Court (the "Divorce Judgment").[1] The Divorce Judgment provided for joint legal custody of the parties' three minor children, "with primary physical residence being awarded to the [Debtor]."[2] The Divorce Judgment awarded the Debtor the marital home.[3] The Divorce Judgment provided, in relevant part:

> Each party shall keep the other informed of the whereabouts of the children and their own whereabouts in the event of a medical or other emergency.

---

[1] A copy of the Divorce Judgment is attached to Plaintiff's brief in response to the Show-Cause Order (Docket # 16) at Exhibit B.

[2] Divorce Judgment at 3 ("5. CUSTODY OF MINOR CHILDREN").

[3] *See id.* at 12-14. The marital home awarded to the Debtor is located at 4612 W. Maple Road, Bloomfield Township, Michigan. In this opinion, the Court will refer to that home as the "marital home," even though such home is now the Debtor's home, because even after the Divorce Judgment was entered awarding the Debtor such home, the state court sometimes referred to the home as the "marital home."

2

> . . .
>
> Each party shall provide the other with their present address and telephone number and any subsequent changes thereof.
>
> The [Debtor] shall notify the Friend of the Court in writing whenever the address of the minor children changes.[4]

### B. Post-judgment proceedings in the state court

After the Divorce Judgment was entered, Plaintiff discovered that the marital home was contaminated by mold, which was causing pre-existing medical conditions of the children to worsen while they were in the Debtor's custody. Plaintiff filed a motion in the state court divorce case, seeking an order requiring the Debtor to remediate the mold problem in the marital home, and removing the children from the home until such remediation was completed.

The parties later reached a settlement of the motion, and on February 12, 2014, the state court entered a stipulated order entitled "Stipulated Order Regarding Plaintiff's Motion Concerning Marital Home" (the "Stipulated Order"), which provided, in relevant part:

> IT IS HEREBY ORDERED that during the time the minor children are with the [Debtor], they will only reside with her at the maternal grandparent's home effective February 12, 2014, without prejudice, until further order of the Court.
>
> IT IS FURTHER ORDERED that the attorneys for the parties and an agent from Belfor Property Restoration will meet at the subject property on February 19, 2014, at 12:30 p.m. for the purpose of investigating and determining how best to remediate and repair the house.
>
> IT IS FURTHER ORDERED that the issues of attorney fees and costs, the cost of repair and remediation, and any other issues in the motion not covered by this Order, are reserved for

---

[4] *Id.* at 4.

determination by the Court.⁵

On September 3, 2014, Plaintiff filed a motion in the state court to hold the Debtor in contempt of court (the "Contempt Motion"), based on the Debtor's alleged violation of the Stipulated Order and several provisions of the Divorce Judgment.⁶ Plaintiff alleged in the Contempt Motion that the Debtor violated the Stipulated Order by "mov[ing] the children back into the [marital] house on March 30, 2014, even though [the Debtor] had not had the mold problem remediated."⁷ Plaintiff also alleged that the Debtor violated the provisions of the Divorce Judgment that required the Debtor to keep the Plaintiff informed about her and their children's whereabouts; their current address and telephone number; and any changes to their address and telephone number.⁸ The Contempt Motion, in relevant part, sought an award of the attorney fees and costs that Plaintiff had allegedly incurred "in connection with having to file the . . . [Contempt] Motion, including all costs and fees that were preserved for future determination."⁹

On October 8, 2014, the state court entered an order holding the Debtor in contempt (the "Contempt Order"),¹⁰ based on her violation of the Stipulated Order. The Contempt Order

---

⁵ A copy of the Stipulated Order is attached to Plaintiff's brief (Docket # 16) as Exhibit E.

⁶ Contempt Mot. at 5 ¶ 9, 6 ¶ 13, 7 ¶ 17(a), 8 ¶ 17(b), 9 ¶ 17(d), 12 ¶ 24, 13 ¶ 29. A copy of the Contempt Motion is attached to Plaintiff's brief (Docket # 16) as Exhibit D.

⁷ *Id.* at 5 ¶ 9.

⁸ *Id.* at 7 ¶ 17(a), 9 ¶ (b).

⁹ *Id.* at 16 ¶ A(iv).

¹⁰ Contempt Or. (Ex. G of Plaintiff's brief in response to the Show-Cause Order (Docket # 23)). Exhibit G filed at Docket # 23 amends and supercedes Exhibit G filed at Docket # 16, which was illegible.

4

provided in relevant part, that "[t]he issues of sanctions and attorney fees is set for an evidentiary hearing on January 24, 2015 at 8:30 a.m." That evidentiary hearing has not yet taken place, apparently because of the Debtor's intervening Chapter 7 bankruptcy case, filed on September 10, 2014.

### C. Plaintiff's proof of claim

On June 8, 2015, Plaintiff filed a proof of claim (Claim No. 2, "Proof of Claim") in the Debtor's bankruptcy case (Case No. 14-54351). The Proof of Claim states, in the section entitled "Basis for Claim": "Claim for sanctions and divorce judgment claims." In his brief in response to the Court's Show-Cause Order, Plaintiff alleges that the basis for the Proof of Claim is as follows:

> The Proof of Claim is in the amount of $597,060.00. The claim has three components: (i) Debtor's indemnification of the Plaintiff for any claims related to the real estate located at 4612 W. Maple Road, which arises under the [Divorce] Judgment. The Plaintiff valued this aspect of the claim in the amount of $499,000.00; (ii) Debtor's obligation to give to Plaintiff his 50% share of their marital property in the Debtor's possession, which arises under the [Divorce] Judgment. The Plaintiff valued this aspect in the amount of $68,060.00; and **(iii) the Plaintiff's claim against the Debtor in the amount of $30,000.00 for attorney fees and costs. This claim arises out of the Debtor's violation of the Stipulated Order, which occurred after the [Divorce] Judgment was entered and has nothing to do with any marital obligations or any obligation arising under the [Divorce] Judgment.**[11]

## III. Jurisdiction over this adversary proceeding

### A. Relevant jurisdictional principles

The issue now before the Court, raised by the Show-Cause Order, is whether this Court

---

[11] Pl.'s Br. in Response to Show-Cause Or. (Docket # 16) at 8 (emphasis added).

has subject matter jurisdiction over this adversary proceeding. "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted); *see also Carto v. Oakley* (*In re Oakley*), 503 B.R. 407, 421 (Bankr. E.D. Pa. 2013)("Questions of standing must be considered *sua sponte* by federal courts, including bankruptcy courts, as they are akin to subject matter jurisdiction.").

> Courts must resolve questions of subject matter jurisdiction before ruling on the merits of the claim. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983). Where the plaintiff has no Article III standing to bring a case, jurisdiction is lacking and the court must dismiss it. *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir.2000). To have Article III standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct **and likely to be redressed by the requested relief.**" *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir.2012). The alleged injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, No. 14-1704, 2015 WL 4079438, at *2 (6th Cir. July 7, 2015)(emphasis added); *see also Lindsey v. Pinnacle Nat'l Bank* (*In re Lindsey*), 726 F.3d 857, 858 (6th Cir. 2013)(explaining that "subject matter jurisdiction is neither forfeitable nor waivable," and that whether the court has subject matter jurisdiction is an issue "that takes absolute priority over all merits questions in a case").

> Federal courts generally lack subject matter jurisdiction to consider moot claims. *Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency,* 581 F.3d 1169, 1172–73 (9th Cir.2009). A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, Section 2, of the U.S. Constitution.

6

> Specifically, mootness occurs "when the issues presented are no longer live or **the parties lack a legally cognizable interest in the outcome**." *PUC v. FERC,* 100 F.3d 1451, 1458 (9th Cir.1996). **The latter situation is commonly referred to as the "personal-stake requirement," and it assures that "federal courts are presented with disputes they are capable of resolving" because they can afford the prevailing party meaningful relief**. *U.S. Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). **Accordingly, if the plaintiff receives the entire relief sought in a particular action, the case generally becomes moot because there is no longer anything in dispute between the parties**. *See generally Gator.com v. L.L. Bean, Inc.,* 398 F.3d 1125, 1131–32 (9th Cir.2005); *FERC,* 100 F.3d at 1458.

*Clausen Law Firm, PLLC v. Nat'l Acad. of Continuing Legal Educ.*, 827 F. Supp. 2d 1262, 1267 (W.D. Wash. 2010)(emphasis added); *see also Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014)(emphasis added)(citations omitted)("'Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.' 'When—for whatever reason—the dispute discontinues or **we are no longer able to grant meaningful relief to the prevailing party**, the action is moot, and we must dismiss for lack of jurisdiction.'").

**B. Jurisdiction in this case**

The Court concludes that it does not have subject matter jurisdiction over this adversary because it cannot award any meaningful relief to the Plaintiff. This is so because even if the Plaintiff is successful in obtaining an order denying Debtor a discharge under 11 U.S.C. § 727(a), which is the only relief Plaintiff is requesting in this adversary proceeding, he would gain nothing for himself, beyond what he already has. If Debtor is denied a discharge, any debt the Debtor owes to Plaintiff will not be discharged in Debtor's Chapter 7 bankruptcy case. But Plaintiff

7

already has this relief, because, as discussed below, any debt the Debtor owes to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(15), and thus will not be discharged in this Chapter 7 bankruptcy case.

In a similar case, *Mapley v. Mapley*, 437 B.R. 225 (Bankr. E.D. Mich. 2010), this Court dismissed an adversary proceeding seeking a denial of the debtor's discharge brought by the plaintiff (the ex-wife of the debtor). That dismissal was based on a lack of subject matter jurisdiction, where all of the debts owed by the debtor to the plaintiff were nondischargeable under either 11 U.S.C. § 523(a)(5) or § 523(a)(15). This Court reasoned:

> [I]t is clear that none of the debt in question will be discharged even if the Debtor obtains a discharge in his Chapter 7 case. So Plaintiff Gloria Mapley will suffer no injury if the Debtor obtains his Chapter 7 discharge. It follows that the relief Plaintiff seeks in this adversary proceeding would give her nothing she does not already have—what she already has is a claim against the Debtor that will not be discharged in the Debtor's Chapter 7 case. Thus, Plaintiff can gain nothing for herself by blocking the Debtor's discharge under § 727. And Plaintiff does not have standing to object to the Debtor's discharge solely on behalf of other creditors.
>
> For these reasons, Plaintiff cannot satisfy the Article III "case or controversy" requirement, and this Court lacks subject matter jurisdiction. Put in more practical terms, there is no legitimate point to Plaintiff pursuing the only relief she seeks in this adversary proceeding (a denial of Debtor's Chapter 7 discharge.)

*Id.* at 228-29 (footnotes omitted)(citation omitted).

**C. Plaintiff's arguments**

In Plaintiff's brief in response to the Court's Show-Cause Order, Plaintiff attempts to distinguish the facts of this case from those in *Mapley*. First, Plaintiff argues that the third component of his claim; namely the $30,000 portion of the claim for attorney fees and costs, is

8

*dischargeable* in the Debtor's bankruptcy case, whereas the debt in *Mapley* was entirely nondischargeable.[12] Second, Plaintiff argues that his claim for attorney fees and costs arose as a result of the Debtor's violation of her obligations under the state court Stipulated Order, which was entered *after* the Divorce Judgment was entered, and which, Plaintiff says, therefore had nothing to do with any obligation in the Divorce Judgment. According to Plaintiff, because of these differences, the reasoning in *Mapley* does not apply to this case. The Court disagrees.

The Court concludes that, in the event that the state court enters an order requiring the Debtor to pay to Plaintiff the attorney fees and costs he incurred as a result of her being held in contempt of the Stipulated Order, such debt would be nondischargeable under § 523(a)(15).

Section 523(a)(15) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> . . .
>
> (15) **to a** spouse, **former spouse**, or child **of the debtor** and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or ***in connection with*** **a separation agreement, divorce decree or other order of a court of record**, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15) (emphasis added). Any debt owing by the Debtor to the Plaintiff arising out of the Contempt Order would be owed to a former spouse (Plaintiff), and would be a debt incurred by the Debtor *in connection with* a divorce decree (the Divorce Judgment) or *other order of a court of record* (the Contempt Order entered by the state court in the divorce case –

---

[12] Pl.'s Br. in Response to Show-Cause Or. at 10-11.

the Oakland County Circuit Court). The Stipulated Order that the Debtor violated concerned and modified the custody arrangement in the Divorce Judgment. And the Contempt Order, in turn, was based on the Debtor's violation of the Stipulated Order. Therefore, contrary to Plaintiff's argument, the Stipulated Order and the Contempt Order were both "in connection with" the "divorce decree" within the meaning of § 523(a)(15).

It is immaterial, for purposes of § 523(a)(15), whether a divorce-related debt arises after a judgment of divorce has been entered. And it makes no difference, for purposes of § 523(a)(15), whether the claim arises out of an obligation in the divorce judgment itself or out of an order entered after entry of the divorce judgment that creates new or modified obligations between the divorcing parties. Both types of debts are made *in connection with* the divorce decree or other order of a court of record. *See Tritt v. Tritt* (*In re Tritt*), No. 12-43446, 2014 WL 1347763, at *1 (Bankr. E.D. Texas April 4, 2014)(holding that debts under three separate orders entered after a divorce judgment was entered between ex-spouses in a divorce case were nondischargeable under § 523(a)(15): (1) an order sanctioning the ex-wife in the amount of $1,000 for post-judgment bad faith conduct; (2) an order holding the ex-wife in contempt for violating numerous provisions of a protective order to which she previously agreed; and (3) an order requiring the ex-wife to pay $115,432.61 in attorney fees, expenses, and costs plus interest incurred by the ex-husband in defending the ex-wife's post-judgment motion for modification of custody)); *Reissig v. Gruber* (*In re Gruber*), 436 B.R. 39 (Bankr. N.D. Ohio 2012)(stating, in dicta, that an award of attorney fees in a post-divorce proceeding qualifies as a debt that was incurred "'in connection'" with the [p]arties' divorce decree").

Plaintiff has cited no authority supporting his argument that § 523(a)(15) does not apply

10

to the debt arising from the Contempt Order. And the Debtor in this case agrees that the debt at issue is nondischargeable under § 523(a)(15).[13]

Because the debt at issue is nondischargeable under § 523(a)(15), the Plaintiff here, like the plaintiff in *Mapley*, lacks standing in this adversary proceeding. Because Plaintiff already has the entire relief he seeks for himself in this adversary proceeding, he has no personal stake in pursuing a denial of the Debtor's discharge, and the Court cannot afford him any meaningful relief beyond what he already has received.

Nor does Plaintiff have standing to object to the Debtor's discharge on behalf of any *other* creditors. *See Mapley*, 437 B.R. at 229 (quoting *Day v. Klingler* (*In re Klingler*), 301 B.R. 519, 523 (Bankr. N.D. Ill. 2003) ("[T]he debt Klingler owes Day will not be discharged. . . . Day no longer has any personal stake in any other discharge decision. . . . At most, he is litigating now to vindicate the rights of any remaining creditors, which he cannot do. Or else he is simply litigating out of distaste for Klingler, which he also cannot do."). That is something the United States Trustee and the Chapter 7 trustee may be able to do, in effect, under 11 U.S.C. § 727(c)(1),[14] by virtue of their statutory functions and duties. *See generally* 11 U.S.C. §§ 323, 704 (Chapter 7 trustee); 28 U.S.C. § 586 (United States Trustee). But under the Bankruptcy Code, a private party creditor can litigate dischargeability issues only for himself, even though a single creditor's success in blocking a discharge under § 727(a) may have the *effect* of benefitting other creditors. A private party creditor *with a nondischargeable debt* may

---

[13] Def.'s Br. in Response to Show-Cause Or. at 3.

[14] In this case, neither the Chapter 7 trustee nor the United States Trustee has objected to the Debtor's discharge yet. But they each have an extension of time until August 28, 2015 to do so. (*See* the Order at Docket # 115 in main case).

11

not object to a debtor's discharge *on behalf of* other creditors. Plaintiff has cited no case holding otherwise.

Plaintiff argues that, as a "creditor" of the Debtor, he is authorized to file an adversary proceeding objecting to the Debtor's discharge by § 727(c)(1).[15] But that section's general authorization for a "creditor" to object to a discharge does not override, but rather is necessarily subject to, the constitutional "case or controversy" requirement, discussed in the cases cited in parts III.A and III.C above.

Plaintiff argues further that even if he is a creditor with a nondischargeable claim, and therefore cannot allege an individualized injury that will occur if the Debtor's discharge is granted, Plaintiff still has standing to pursue the § 727 action on behalf of "(1) the entire creditor body, (2) the federal judicial system, and (3) the people of the United States" who all "have a vested interest" in "deny[ing] a discharge to 'those debtors who fall within any of the exceptions set forth in § 727(a).'"[16] Finally, Plaintiff argues that "[i]f this Court dismisses this action for lack of subject matter jurisdiction, it will have created an irreconcilable conflict with Fed.R.Bank.P. 7041 and L.B.R. 7041-1."[17]

None of these arguments have merit. Even if Plaintiff was authorized generally to file the adversary proceeding under § 727(c)(1) due to his status as a creditor, he must be viewed as lacking standing to prosecute the adversary proceeding as soon as the Court determines that he is

---

[15] Pl.'s Br. in Response to Show-Cause Or. at 13. Section 727(a) of the Bankruptcy Code states that "[t]he trustee, **a creditor**, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. § 727(c)(1) (emphasis added).

[16] *See* Pl.'s Br. in Response to Show-Cause Or. at 11-13 (relying on *In re Levine*, 287 B.R. 683 (Bankr. E.D. Mich. 2002).

[17] *Id.* at 12.

owed only a nondischargeable debt. (And this Court has now made this determination as to Plaintiff).

> Although a case or controversy may exist at the time the litigation is commenced, it must continue at every stage of a proceeding:
>
>> That restriction requires that the party invoking federal jurisdiction have standing—the "personal interest that must exist at the commencement of the litigation." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotation marks omitted). But it is not enough that the requisite interest exist at the outset. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 [117 S.Ct. 1055, 137 L.Ed.2d 170] (1997).
>
> *Davis v. Federal Election Commission,* 554 U.S. at 732–33, 128 S.Ct. 2759; *see, e.g., Chamber of Commerce of U.S. v. E.P.A.,* 642 F.3d 192, 199 (D.C.Cir.2011).
>
> The doctrine of mootness "has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), which quoted Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)). "**In sum, the mooting of a case can occur in one of two ways**. It may occur because the legal issue in dispute is no longer amenable to review and judicial relief would serve no purpose, or **it may occur because a party no longer has a personal stake in the controversy and has, in essence, been divested of standing.**" 15 *Moore's Federal Practice—Civil* § 101.90 (2012).

*421 Chestnut Partners, LP v. Aloia* (*In re Aloia*), 496 B.R. 366, 377 (Bankr. E.D. Pa.

13

2013)(emphasis added). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of [federal] jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). And the fact that third parties may benefit if the Debtor is denied a discharge also does not confer standing on Plaintiff, under the facts of this case. In *Seldin*, the United States Supreme Court explained:

> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. E.g., *Barrows v. Jackson*, 346 U.S. 249, 255—256, 73 S.Ct. 1031, 1034—1035, 97 L.Ed. 1586 (1953). In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society. See *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 221—227, 94 S.Ct. 2925, 2932—2935, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 188—197, 94 S.Ct. 2940, 2952—2956, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).
>
> In its constitutional dimension, standing imports justiciability: whether **the plaintiff** has made out a 'case or controversy' **between himself and the defendant** within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether **the plaintiff** has 'alleged such **a personal stake** in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). **The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party,** *even though the court's judgment may benefit others collaterally*. A federal court's jurisdiction therefore can be invoked **only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action** . . ..' *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). See *Data Processing*

> *Service v. Camp*, 397 U.S. 150, 151—154, 90 S.Ct., 827, 829—830, 25 L.Ed.2d 184 (1970).

*Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis added)(footnotes omitted).

*In re Levine,* 287 B.R. 683 (Bankr. E.D. Mich. 2002), a case cited by Plaintiff in support of his position, is not on point. *Levine* concerned only the settlement of a § 727(a) action by the Chapter 7 trustee, not dismissal of the action for lack of jurisdiction. The issue in *Levine* was not whether the plaintiff chapter 7 trustee had standing to prosecute an adversary proceeding objecting to the debtor's discharge under § 727(a), but rather whether the plaintiff trustee could settle the objection to the discharge for consideration. *Levine* has nothing to do with the jurisdictional issue in this case.

Fed. R. Bankr. P. 7041 and LBR 7041-1 also do not apply, and do not inform the Court on the jurisdictional issue in this case. Those rules only apply when the plaintiff, singly or jointly with the other parties, seeks to voluntarily dismiss a § 727 action. Fed. R. Bankr. P. 7041 states:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed **at the plaintiff's instance** without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

(Emphasis added).

LBR 7041-1 states:

> When the **parties to an action** under § 727 propose to dismiss the action, they shall file a joint statement of the consideration received or to be received by the plaintiff. The plaintiff shall then serve the joint statement on all creditors and the trustee, with a notice stating that the deadline to file objections is 14 days after service, and file a certificate of service. If no timely objection is filed, the plaintiff shall promptly file a certificate of no response

15

and submit the agreed proposed dismissal order. If a timely
response is filed, the court will set the matter for hearing.

(Emphasis added).

Neither Fed. R. Bankr. P. 7041 nor LBR 7041-1 apply to dismissals by the Court, due to a lack of subject matter jurisdiction.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order dismissing this adversary proceeding, for lack of subject matter jurisdiction.


**Signed on July 31, 2015**            **/s/ Thomas J. Tucker**
                                                                                        **Thomas J. Tucker**
                                                                                        **United States Bankruptcy Judge**